630 A.2d 1257

COMMONWEALTH of Pennsylvania

v.

Walter JENNINGS, Appellant.

Superior Court of Pennsylvania.

Submitted June 7, 1993.

Filed Sept. 2, 1993.

John P. Winicov, Philadelphia, for appellant.

Kathy L. Echternach, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before McEWEN, KELLY and CERCONE, JJ.

CERCONE, Judge.

This is an appeal from the judgment of sentence entered by the Court of Common Pleas of Philadelphia County on October 22, 1992. For the reason which follow, we affirm.

In this case, we are presented with an issue of first impression in Pennsylvania: Whether the Commonwealth may assert a "surveillance site privilege" to prevent disclosure of the exact location used by police officers to observe suspected criminal activity. We recognize that discovery of an officer's surveillance location falls within the discretionary disclosure requirements of Pennsylvania Rule of Criminal Procedure 305 B(2), 42 Pa.C.S.A., and hold that such information is subject to a qualified privilege.[1]

1. New Jersey, California, Massachusetts, the District of Columbia Court of Appeals, and the United States Court of Appeals (D.C. Circuit) have also recognized the existence of the surveillance location privilege. *See State v. Garcia,* 131 N.J. 67, 618 A.2d 326 (1993); *Hines v. Superior*

Following a bench trial, appellant was found guilty of possession with intent to deliver a controlled substance (cocaine).[2] Appellant timely filed post-trial motions which the trial court denied. This appeal followed. The trial court aptly summarized the facts underlying this appeal as follows:

On the evening of December 14, 1991, a unit of the Philadelphia City Narcotic Strike Force was conducting an investigation in the 2900 block of North Park Avenue. Police Officer David Fisher, Kenneth Scott, Jeffrey Mason and Sergeant Kevin Bethel were the members of the Strike Force.

Officer Fisher was the observation officer conducting surveillance from a "confidential location" on the 2900 block of North Park Avenue. The other three members were serving as "back-up" officers and they were in uniform.

Within approximately forty-five minutes of setting up surveillance, Officer Fisher saw the Defendant on the southeast corner of the block. The defendant was talking with a second black male, who was about 6'2" wearing a long black coat.

The Officer next observed a third black male approach the Defendant. He was wearing a red jacket and blue sweatpants. He and the Defendant engaged in a brief conversation after which he handed the Defendant an unknown amount of currency.

Defendant next reached into his left pocket and retrieved a plastic bag. He then pulled out several plastic vials with red caps and gave them to the purchaser. The purchaser proceeded to walk north on Park Avenue, away from the Defendant. Defendant and the second male remained on the corner.

After the purchaser walked away, Officer Fisher who had been in contact with his back-up via two-way "walkie-

Court, 203 Cal.App.3d 1231, 251 Cal.Rptr. 28 (1 Dist., 1988); Commonwealth v. Lugo, 406 Mass. 565, 548 N.E.2d 1263 (1990); Anderson v. United States, 607 A.2d 490 (D.C.App.1992); United States v. Green, 670 F.2d 1148 (D.C.Cir.1981).

**2.** 35 P.S. § 780–113(a)(30).

talkies" relayed to his back-up the facts of the transaction he had just observed. Officer Fisher also gave a description of the Defendant, the second male and the purchaser.

Before the back-up officers "moved in" to the area, Officer Fisher momentarily lost sight of the Defendant and told Officer Mason not to proceed until the Defendant was back in his sight. Once Defendant was in sight, Officer Fisher gave Officer Mason the "go ahead."

Officer Mason was in a police wagon and drove north on Park Avenue toward the Defendant. Officer Mason stopped the wagon and approached the Defendant. As Officer Mason approached, the Defendant dropped a clear plastic baggie containing vials with red caps on the sidewalk and began running east toward Cambria Street. Officer Mason got back into the wagon and drove after the Defendant. Officer Fisher observed the above-described incident. After the Defendant fled from the scene, he observed the second male pick-up the baggie. He next radioed Officer Scott and Sergeant Bethel that the friend had the baggie of drugs and that he was walking north on Park Avenue with two black females.

Officer Scott arrested the purchaser on the 2700 block of North Broad. Five clear plastic vials with red caps containing an off-white chunky substance were recovered from the purchaser's right pants pocket.

Officer Mason eventually stopped the Defendant on the 1300 block of Somerset Street. Nothing was recovered from the Defendant.

The second male was arrested by sergeant Bethel at the intersection of Park Avenue and Cambria Street. A clear plastic baggie containing 50 clear plastic vials with red caps containing an off-white chunky substance was recovered from the second male.

The three individuals were brought to the 2900 block of Park Avenue where Officer Fisher identified the three individuals as those involved. The identification was made within ten minutes of the incident. The vials and baggie that had been seized were later analyzed. The analysis

revealed that both of the five vials and the fifty vials contained a cocaine-based substance.

Trial Court Opinion filed 1/25/93 at 3–5 (footnote and citations to Notes of Testimony omitted).

Prior to trial, appellant filed a motion to discover the exact location of Officer Fisher at the time he allegedly observed appellant delivering a controlled substance. The trial court conducted an *in camera* hearing at which time appellant asserted his need for the information. Thereafter, the trial court conducted an *ex parte* hearing at which the Commonwealth disclosed its evidence to the court. The court subsequently ruled that the Commonwealth did not have to disclose the exaction location of the surveillance site. At trial, the Commonwealth objected to any attempts by appellant's counsel to seek information which would disclose the location of the surveillance site. The trial court sustained the Commonwealth's objections. Now, appellant contends that the trial court improperly denied his pre-trial motion to discover Officer Fisher's surveillance location. In this regard, appellant avers that such information is subject to mandatory discovery pursuant to Pa.R.Crim.P. 305 B(1). We disagree.

■ Rule 305 B(1) provides, in pertinent part:

(1) *Mandatory:* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

\*　　\*　　\*　　\*　　\*　　\*

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification[.]

Pa.R.Crim.P., Rule 305 B, 42 Pa.C.S.A. The Comment to Rule 305 explains the meaning of the term "identification," as used in the rule:

Whenever the rule makes reference to the term "identification," or "in-person identification," it is understood that such terms are intended to refer to all forms of identifying a defendant by means of the defendant's person being in some way exhibited to a witness *for the purpose of an identification:* e.g., line-up, stand-up, show-up, one-on-one confrontation, one-way mirror, etc. The purpose of this provision is to make possible the assertion of a rational basis for a claim of improper identification based upon *Stovall v. Denno,* 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967), and *United States v. Wade,* 388 U.S. 218, 87 S.Ct. 1926, 18 L.Ed.2d 1149 (1967).

Comment to Rule 305, Section 1.2: Scope of Discovery (emphasis added). Here, Officer Fisher's observations were not "for the purpose of an identification," nor was defendant "exhibited" to him for this purpose. Rather, Officer Fisher's observations occurred as the result of his investigation of criminal activity purportedly taking place in the immediate vicinity. Accordingly, disclosure of his surveillance location was not subject to mandatory discovery pursuant to Rule 305 B(1)(d).

Appellant also argues that the trial court abused its discretion by not ordering the disclosure of the surveillance location pursuant to Rule 305 B(2)(d). Rule 305 B(2) provides, in relevant part:

*Discretionary with the Court:* In all court cases, except as otherwise provided in Rule 263 (Disclosure of Testimony Before Investigating Grand Jury), if the defendant files a motion for pretrial discovery, the court may order the Commonwealth to allow the defendant's attorney to inspect and copy or photograph the following requested items, upon a showing that they are material to the preparation of the defense, and that the request is reasonable:

\* \* \* \* \* \*

(d) any other evidence specifically identified by defendant, *provided the defendant can additionally establish that its disclosure would be in the interests of justice.*

Pa.R.Crim.P., Rule 305 B(2), 42 Pa.C.S.A. (emphasis added). Appellant contends that because he established that the exact location of the surveillance location was (1) material to his defense; (2) reasonable; and (3) in the interest justice, he was entitled to disclosure of the location. The Commonwealth counters arguing that such information should be afforded the same protection granted to the identity of confidential informants. In this regard, the Commonwealth contends that appellant failed to sustain his burden to demonstrate any need for the exact location of the surveillance site. We agree.

For many years, courts of the United States have recognized the need to protect the identities of individuals who provide information to the police or prosecutors regarding criminal activities. In *Roviaro v. United States*, 353 U.S. 53, 77 S.Ct. 623, 1 L.Ed.2d 639 (1957), the United States Supreme Court recognized that protection of the identity of a confidential informant was of vital public interest. *Id.* at 61, 77 S.Ct. at 628. To determine whether disclosure was appropriate, the United States Supreme Court developed and applied a balancing test:

> We believe that no fixed rule with respect to disclosure is justifiable. The problem is one that calls for balancing the public interest in protecting the flow of information against the individual's right to prepare his defense. Whether a proper balance renders nondisclosure erroneous must depend on the particular circumstances of each case, taking into consideration the crime charged, the possible defenses the possible significance of the informer's testimony, and other relevant factors.

353 U.S. at 62, 77 S.Ct. at 628–29. The *Roviaro* balancing test was accepted by our Pennsylvania Supreme Court in *Commonwealth v. Carter*, 427 Pa. 53, 58, 233 A.2d 284, 287 (1967) and has been applied in subsequent cases. *See Commonwealth v. Bonasorte*, 337 Pa.Super. 332, 486 A.2d 1361 (1984).

■ There are obvious similarities between the government's interest in protecting the identity of a confidential informant, and its interest in preventing the disclosure of a confidential surveillance location. In analyzing the similarities

between the two situations, the District of Columbia Court of Appeals aptly explained:

[l]aw enforcement interests in surveillance positions are analogous to those concerning informants. If an observation location becomes known to the public at large, its value to law enforcement probably will be lost. The revelation, moreover, may jeopardize the lives of police officers and of cooperative occupants of the building.

*Anderson v. United States,* 607 A.2d 490, 495, (D.C.App.1992) (quoting *Hicks v. United States,* 431 A.2d 18 (D.C.App.1981)). Based upon these similarities, we find that a qualified privilege is necessary to protect the exact location of a confidential surveillance site.

The request to produce a confidential informant is a discovery matter under Pa.R.Crim.P., Rule 305 B, 42 Pa. C.S.A. *Commonwealth v. Bonasorte,* 337 Pa.Super. at 347, 486 A.2d at 1370 (citing *Commonwealth v. Iannaccio,* 505 Pa. 414, 480 A.2d 966 (1984), *cert. denied,* 474 U.S. 830, 106 S.Ct. 96, 88 L.Ed.2d 78 (1985)). "The [supreme] court has also reached a consensus that the issue is viewed under the rubric of discretionary discovery Pa.R.Crim.P. 305 B(2)...." *Id.* at 347, 486 A.2d at 1370. Here, appellant argues, and we agree that Rule 305 B(2)(d) governs discovery of a confidential surveillance site. In determining the prerequisites to discovery of a confidential surveillance location, we are guided by this court's interpretation of the rule in matters involving the disclosure of a confidential informant. To seek disclosure of the identity of a confidential informant under Rule 305 B(2)(d), which provides for the production of "any other evidence specifically identified by the defendant," the defendant must not only file a motion for pre-trial discovery, he must also establish that its disclosure would be in the interests of justice. Rule 305 B(2)(d).

However, in meeting this additional burden, "more is necessary than a mere assertion by the defendant that such disclosure might be helpful in establishing a particular defense." *Commonwealth v. Mickens,* 409 Pa.Super. 266, 274,

597 A.2d 1196, 1200 (1991). *Accord Commonwealth v. Eicher,* 413 Pa.Super. 235, 256, 605 A.2d 337, 347 (1992). Although the defendant cannot be expected to demonstrate that such information would actually be helpful, the record must at least suggest a reasonable probability that the information would be helpful, and that it is necessary. *Commonwealth v. McGinn,* 251 Pa.Super. 170, 173, 380 A.2d 431, 433 (1977).

> It is important to note that the Rule speaks in terms of a showing *by the defendant.* These conditions cannot be assumed, and they must be supported by the evidence on the record. It is in this context that the evidence presented at the hearing must be examined to determine whether the defendant met his burden (or more precisely whether the court abused its discretion in determining that he had).

*Commonwealth v. Bonasorte,* 337 Pa.Super. at 349, 486 A.2d at 1370 (emphasis added). The defendant is required to make a showing that the production of the informant is "material to the defense." *Id.* at 351, 486 A.2d at 1370. If defendant meets this burden, the trial court is then required to balance the needs of the defendant against the public interest in protecting the flow of information. *Id.* at 352–53, 486 A.2d at 1372.

Federal courts have developed their own test for determining whether a confidential surveillance location must be disclosed to the defendant. In *United States v. Green,* 670 F.2d 1148 (D.C.Cir.1981), the federal court of appeals approved the withholding of the location of a police surveillance post at a suppression hearing; and in *United States v. Harley,* 682 F.2d 1018 (D.C.Cir.1982), the court held that the privilege applies at trial as well. Again the court applied a balancing test controlled by "the fundamental requirement of fairness." *Id.* at 1020. The District of Columbia Court of Appeals opined:

> A defendant seeking to learn the location of a police surveillance post should ordinarily show that he needs the evidence to conduct his defense and that there are no adequate alternative means of getting at the same point. The degree of the handicap he establishes must then be weighed by the trial judge against the policies underlying

the privilege. This is necessarily a somewhat ad hoc balancing process so that, as *Roviaro* said, "no fixed rule with respect to disclosure is justifiable." *Id.* [353 U.S.] at 62, 77 S.Ct. at 628.

*Id.*

The District of Columbia likewise recognizes the need to balance the interests of the government against those of the defendant. Among those factors considered by the District of Columbia Court of Appeals are whether the use of the particular surveillance post had been abandoned so as to assure the safety of the police officers using the site, the safety of the cooperating apartment owner or tenant, as well as the willingness of other citizens to cooperate with the police in this fashion in the future. *Anderson v. United States, supra,* 607 A.2d at 495. In New Jersey, a trial judge is required to balance the necessity for disclosure against the consequence of revealing the surveillance site:

> [I]f the vantage point is in a private home or a place of business, real potential for reprisal against the owner may weigh against disclosure. If maintenance of secrecy is necessary to protect ongoing investigations, this must be considered; if the site is no longer used or useful, other considerations could control.

*State v. Crudup,* 176 N.J.Super. 215, 220, 422 A.2d 790, 790 (1980). This sound reasoning is of assistance in analyzing the facts of the instant case.

■ Here, appellant averred, and we may conclude, that the testimony from the eye-witness of what he observed from the confidential surveillance location contained material facts pointing to appellant's guilt. However, at the *in camera* hearing on appellant's request to discover the exact location of Officer Fisher, appellant alleged that he needed the information so as to conduct an investigation of the area. Appellant's counsel argued that he would take measurements of the area to see whether or not the distance would support the Commonwealth's case. N.T. 4/6/92 at 6. Because this case revolves upon Officer Fisher's identification of appellant, counsel

argued that his cross-examination would be blocked without specific knowledge of the location from which Officer Fisher viewed the alleged criminal activity. *Id.* at 7. Obviously, this very general argument advanced by appellant falls far short of suggesting a reasonable probability that the information would be helpful and material to appellant's case. *Commonwealth v. McGinn, supra,* 251 Pa.Super. at 173, 380 A.2d at 433. Specifically, appellant failed to put forth the precise manner in which the failure to reveal this information would handicap his case.

Even without the requisite showing, however, the Commonwealth presented the testimony of Officer Fisher. Officer Fisher testified that he observed the criminal activity of appellant from a distance of about five to seven feet and that his view was unobstructed. N.T. 4/6/92 at 11. At an *ex parte* hearing, the Commonwealth revealed the exact location of the surveillance location. After reviewing the evidence presented at that hearing, we have no difficulty in concluding that the balancing test would sustain application of the surveillance site privilege here.[3] It is clear that the trial court properly balanced the interests, as discussed *supra,* and we find no abuse of discretion in this regard.

Judgment of sentence affirmed.

---

**3.** The *ex parte* hearing was conducted so as to protect information regarding the exact location of the surveillance site. It would be inappropriate for us to comment further upon information revealed at the hearing beyond stating that it was not exculpatory to appellant.