COMMONWEALTH of Pennsylvania, Appellee,

v.

Jamal HONESTY, Appellant.

Superior Court of Pennsylvania.

Argued May 4, 2004.

Filed May 27, 2004.

Paul M. George, Philadelphia, for appellant.

Peter Carr, Asst. Dist. Atty., Philadelphia, for Com., appellee.

Before: STEVENS, BENDER, and MONTEMURO,* JJ.

* Retired Justice assigned to the Superior Court.

STEVENS, J.

¶ 1 This is an appeal from the judgment of sentence entered in the Court of Common Pleas of Philadelphia County following Appellant's conviction on the charges of aggravated assault, 18 Pa.C.S.A. § 2702, and possessing an instrument of crime, 18 Pa.C.S.A. § 907. On appeal, Appellant argues (1) the trial court erred in denying Appellant's request for a mistrial due to the Commonwealth's discovery violation, and (2) the trial court erred in limiting Appellant's cross-examination of the victim. We affirm.

¶ 2 The trial court has summarized the facts of this case as follows:

Michael Anthony Veitz, the victim in this case, had known Appellant for several years before November 13, 2002, when the incident occurred. Veitz was addicted to crack cocaine and Appellant was his supplier.

At about 8:45 p.m. on November 13, 2002, Veitz asked his friend, Bob Hand, to give him a ride. Veitz testified that previously he had called Appellant and arranged a drug purchase.

Prior to this, Veitz already owed Appellant $40 for a previous drug purchase. When Appellant reminded him about the money, Veitz told him this purchase was for someone else.

After the drug exchange, Appellant then told Veitz to meet him, alone, at Welsh and Rhawn. Veitz said he was concerned about meeting him there because the area was secluded and he feared Appellant was planning something bad for him because he owed him $40.

Veitz told his friend to drive home. When they arrived home, Veitz saw the Lincoln in which Appellant had been

riding minutes earlier when he purchased the drugs. The Lincoln pulled directly behind Bob Hand's truck. As Veitz exited the truck, Appellant called him over to his side of the car. When Veitz leaned to the window, with his face about two feet away, Appellant pulled out a gun and shot Veitz directly in the face. As he lay in the street, Veitz recalled hearing Appellant shooting again.

He testified regarding his injuries, which were extensive: five weeks hospitalization, [a] titanium plate in his face, cracked facial bones, deafness in one ear, inability to swallow solid foods, affected speech and various problems with nerves, bones, and muscles throughout his body.

Bob Hand testified that he drove Veitz to Bridge Street, near Frankford Avenue, presumably so Veitz could buy drugs. He testified that Veitz got out of the car and met several guys and went around the corner for several minutes. When Veitz came back to Hand's truck, he said they could go home. When Hand returned home, he parked his truck and started to walk toward his home. Someone pulled up in a car and yelled 'Mike.' Veitz told hand that he would come inside in a minute. Before Hand got to the house, he heard the gunshots and noticed the car leaving.

Once he was able to communicate, Veitz easily identified Appellant as the shooter and a man named Dante as the driver. The Lincoln in which the men were traveling was registered to Dante's fiancée who is also the mother of his child.

Trial Court Opinion filed 10/20/03 at 2–3.

¶ 3 Appellant was arrested, and he filed a motion seeking to suppress the victim's identification of Appellant. The trial court denied the motion to suppress, and Appellant proceeded to a jury trial. On May 27, 2003, the jury convicted Appellant of the offenses indicated *supra*, and on July 7, 2003, the trial court sentenced Appellant to an aggregate of ten to twenty years in prison, to be followed by ten years of probation. Appellant filed post-sentence motions, which were denied, and this timely appeal followed.[1]

■ ¶ 4 Appellant first contends that the Commonwealth violated Pa.R.Crim.P. 573(B)(1)(d) and (D) by failing to disclose to Appellant that, during trial, Robert Hand was going to identify Appellant as the shooter in this case, and, therefore, the trial court erred in denying Appellant's oral motion for a mistrial. We find that no relief is due.

¶ 5 The record reveals that, prior to trial, the Commonwealth provided Appellant with Mr. Hand's police statement, wherein Mr. Hand gave a detailed description of the shooter. N.T. 5/22/03 at 157–158. Prior to trial, Mr. Hand was unable to positively identify Appellant as the shooter when he was shown a photo array and various mug shots, and Mr. Hand did not testify at Appellant's preliminary hearing. N.T. 5/22/03 at 148, 158. However, during trial, on direct and cross-examination, Mr. Hand identified Appellant as the shooter. N.T. 5/22/03 at 137–139, 149–150. When questioned, Mr. Hand indicated that he realized that Appellant was the shooter when he saw Appellant enter the courtroom for trial at 12:45 p.m. and that, approximately one-half hour later, Mr. Hand told the prosecutor that he recognized Appellant as the shooter. N.T. 5/22/02 at 149–150, 168. Appellant argues on appeal that, under Pa.R.Crim.P. 573, the prosecu-

1. The trial court did not order Appellant to file a Pa.R.A.P.1925(b) statement, and no such statement was filed. The trial court filed an opinion in this case.

tor should have immediately disclosed to Appellant that Mr. Hand recognized Appellant as the shooter on the day of trial and that Mr. Hand would be testifying to that effect.

¶ 6 Initially, we note that the trial court properly denied Appellant's request for a mistrial, which was made during cross-examination, since such request was untimely made and Mr. Hand's identification testimony offered during cross-examination was merely cumulative of his identification testimony offered during direct examination. Mr. Hand testified during direct examination that he heard two shots, turned around, saw Appellant sitting in the front passenger side of the car, saw Appellant leaning out of the car with his arm extended, and saw the victim lying on the ground. N.T. 5/22/03 at 137–139. Appellant did not object to this testimony offered on direct, and he then cross-examined Mr. Hand extensively about his identification of Appellant until finally requesting a mistrial. N.T. 5/22/02 at 144–150. As such, the trial court properly denied Appellant's request for a mistrial. *See Commonwealth v. Dent,* 837 A.2d 571 (Pa.Super.2003) (discussing harmless error).

¶ 7 In any event, we conclude that the Commonwealth did not violate Pa. R.Crim.P. 573, as is alleged by Appellant.

¶ 8 Pa.R.Crim.P. 573 provides, in relevant part, the following:

**(B) Disclosure by the Commonwealth**

*(1) Mandatory:*

In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

* * *

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in person identification; . . . .

* * *

**(D) Continuing Duty to Disclose**

If, prior to or during trial, either party discovers additional evidence or material previously requested or ordered to be disclosed by it, which is subject to discovery or inspection under this rule, or the identity of an additional witness or witnesses, such party shall promptly notify the opposing party or the court of the additional evidence, material, or witness.

**(E) Remedy**

If at any time during the course of the proceedings it is brought to the attention of the court that a party has failed to comply with this rule, the court may order such party to permit discovery or inspection, may grant a continuance, or may prohibit such party from introducing evidence not disclosed, other than testimony of the defendant, or it may enter such other order as it just under the circumstances.

(emphasis in original).

¶ 9 The Comment to Pa.R.Crim.P. 573 provides, in relevant part, that:

Whenever this rule makes reference to the term 'identification' or 'in person identification,' it is understood that such terms are intended to refer to all forms of identifying a defendant by means of the defendant's person being in some way exhibited to a witness for the purpose of an identification, *e.g.,* a line-up, stand-up, show-up, one-one-one confrontation, one-way mirror, *etc.* The pur-

pose of this provision is to make possible the assertion of a rational basis for a claim of improper identification based upon *Stovall v. Denno,* 388 U.S. 293 [87 S.Ct. 1967, 18 L.Ed.2d 1199] (1967), and *United States v. Wade,* 388 U.S. 218 [87 S.Ct. 1926, 18 L.Ed.2d 1149] (1967).

*See Commonwealth v. Jennings,* 428 Pa.Super. 297, 630 A.2d 1257 (1993).

¶ 10 In the case *sub judice,* Mr. Hand realized that Appellant was the shooter when he saw Appellant, for the first time since the incident, when Appellant entered the courtroom for trial. We conclude that Mr. Hand's observation was not "for the purpose of identification," nor was Appellant "exhibited" to him for this purpose. Rather, Mr. Hand's observation occurred in a rather innocent manner while Mr. Hand was sitting in the courtroom waiting for Appellant's trial to begin. Accordingly, contrary to Appellant's contention, we conclude that Mr. Hand's indication to the prosecutor that he recognized Appellant was not the subject of mandatory disclosure under Pa.R.Crim.P. 573(B)(1)(d).[2]

▇ ¶ 11 Appellant's next argument is that the trial court erred in limiting Appellant's cross-examination of the victim. Specifically, Appellant contends that the trial court should have permitted Appellant to question the victim about a person known as "Love" since "Love" had threatened the victim with a gun prior to the shooting at issue.

¶ 12 At trial, the following exchange occurred:

**Defense Counsel:** And do you know a drug dealer named Love?

**The victim:** Yes, I do. He delivered.

**Prosecutor:** Objection. Relevance, Your Honor.

**The Court:** Sustained.

**Defense Counsel:** Well, in the presence of your brother, Peter, didn't Love pull a gun on you at one point?

**The victim:** No. Love didn't pull a gun on me. I went to Dante's apartment, which is—

**Prosecutor:** Objection, Your Honor.

**The Court:** Sustained.

**Prosecutor:** I would object to the relevance.

**The Court:** It doesn't have anything to do with this. Let's go. It's not relevant.

**Defense Counsel:** Well, I argue that it's relevant because—

**The Court:** I understand what your argument is. I've indicated to you that it's not relevant. Let's go on.

**Defense Counsel:** Well, was your brother, Peter, there when you went to Love's apartment?

**The Court:** All right. I've indicated that that's not relevant, counsel. Let's go on to something else.

N.T. 5/22/03 at 60–61.

¶ 13 We conclude that Appellant has failed to demonstrate that a new trial is warranted in this case. Prior to the prosecutor objecting, the victim testified that "Love" did not point a gun at him. N.T. 5/22/03 at 60. Aside from indicating that the trial court should not have "precluded the defense from questioning the complainant about another suspect," Appellant has failed to indicate what other questions he wished to ask of the victim. As such, we

---

**2.** We note that Appellant's entire argument with regard to Pa.R.Crim.P. 573(D) is that "[t]his tactic also violated Rule 573(D), which imposes a continuing duty to disclose promptly any new identification witness." Prior to trial, Appellant was made aware that Mr. Hand was present at the scene and that he had given the police a detailed description of the shooter. As such, Mr. Hand was not a "new witness" under Pa.R.Crim.P. 573(D).

conclude a new trial is not warranted on this basis.

¶ 14 Affirmed.