J-S01008-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
                                           : PENNSYLVANIA
                                           :
          v.                       :
                                           :
OBATAIYE KAREE SCOTT          :
                                         :
        Appellant           : No. 1400 WDA 2021

Appeal From the Judgment of Sentence Entered November 9, 2021
In the Court of Common Pleas of Fayette County Criminal Division at
No(s): CP-26-CR-0000963-2021

BEFORE: BENDER, P.J.E., KUNSELMAN, J., and COLINS, J.[*]

MEMORANDUM BY BENDER, P.J.E.:            **FILED: MAY 15, 2023**

Obataiye Karee Scott, Appellant, appeals *pro se* from the judgment of sentence of 42 to 120 months of incarceration imposed following his jury trial convictions for contraband, possession of a controlled substance, and one count of conspiracy to possess. We discharge Appellant's conviction for conspiracy. As Appellant was sentenced to no further penalty at this count, our discharge does not disrupt the sentencing scheme. Finding no merit in Appellant's remaining claims, we affirm Appellant's judgment of sentence in all other respects.

On February 14, 2020, Appellant was an inmate at the Fayette County Jail and had his cell searched after a female inmate tested positive for drugs, prompting the correctional officers to initiate a lockdown procedure. During

---

[*] Retired Senior Judge assigned to the Superior Court.

lockdown, all inmates must return to their cells. Correctional Officers Nick Covert and Ron Isler began a search, starting with the female block located on the third floor. Officer Covert explained that jail cells are stacked on top of each other. Each floor of the prison is comprised of two "ranges," with each range having eleven cells. The ranges are back-to-back, and there is "a pipe walk in between, with all the plumbing system going up." N.T., 11/3/21, at 92. The plumbing is located at the back of the cell. *Id.* He explained that inmates are known to take their sheets or clothing which they will "rip … into strips and then tie them off. And then they get a hole through their vents and they create a weight system with like a mini toothbrush or something and then they'll send the line down, through the ventilation system." *Id.* at 65. At the other end, another inmate will use an object with a hook "and then pull it in and that's how they pass things through the pipe walk." *Id.* While traversing the pipe walk, Officer Covert heard Appellant "hollering up to E range to get a fishing line ready." *Id.* at 55. Specifically, Officer Covert heard Appellant say "he's gonna be sending his shit up." *Id.* at 59. When the officers made their way to the second floor, they immediately proceeded to cell D8, where Appellant and his cellmate Rasheme Jones were housed.

Officer Covert found in the toilet "a small plastic baggie with strips of paper in it." *Id*. at 60. The item was sealed in evidence packaging and processed by the Pennsylvania State Police laboratory. The paper strips tested positive for synthetic marijuana. *Id.* at 108.

The Commonwealth filed a criminal information charging Appellant and Jones with an identical set of crimes: contraband, conspiracy to commit contraband, possession of a controlled substance, and conspiracy to commit possession. The jury acquitted Jones of all charges, and acquitted Appellant of conspiracy to commit contraband. The jury, however, found Appellant guilty of contraband, possession of a controlled substance, and criminal conspiracy to possess a controlled substance. Appellant timely filed a court-ordered Pa.R.A.P. 1925(b) statement, and the trial court subsequently filed its Rule 1925(a) opinion. Appellant raises six issues for our review:

I. Whether the prosecution committed misconduct where they knowing[ly] failed to disclose identification evidence of [A]ppellant during discovery then ambushed [A]ppellant at trial during correctional officer Nick Covert's testimony as a strategy to wrongfully prejudice the minds of the jury to render a verdict of guilt.

II. [The] trial court committed an error of law and abus[]ed its discretion by not providing [a] remedy and/or issuing a[n] order of mistrial for the prosec[u]tion's misconduct for trial by ambush strategy that did prejudice and made the jury biased against [A]ppellant.

III. [The] prosecution committed an error of law and abuse of power and discre[]tion by trying Appellant with false evidence, after learning, through Officer Vernail's testimony that [Officer] [C]overt was the witness who provided information to Vernail who wrote [the] affidavit of probable cause based off such allegations.

IV. The trial court committed an error [by] denying [A]ppellant's right to confront certain important key witnesses.

V. [The] trial court committed an error of law for allowing the Commonwealth to prosecute based on hearsay evidence.

VI. [The] trial court committed an error of law and abuse of discretion by failing to grant Appellant's motions for mistrial and

motion to dismiss where evidence presented by the Commonwealth is insufficient and physical evidence does not support the Commonwealth's theory of the crime.

Appellant's Brief at 8 (unnecessary capitalization omitted; reordered for ease of disposition).

Appellant's first three issues all involve a common theme, that the Commonwealth provided intentionally false testimony and/or ambushed Appellant at trial with this purported false testimony.

To understand these claims, we set forth the relevant testimony and surrounding facts adduced at trial in greater detail.[1] Officer Covert testified that he immediately took the seized evidence to the jail's evidence locker. N.T., 11/3/21, at 63. His corresponding police report was dated February 14, 2020. However, at the bottom of the document, Officer Covert wrote "2-15-20" next to his signature. *Id.* at 80. This document did not reference overhearing any conversation between Jones and Appellant, nor did it include any details.

The Uniontown City Police Department has jurisdiction over crimes committed at the jail. Approximately once a week, an officer goes to the jail and opens the evidence locker with a secure key. In this case, Officer Vernail made the trip. He then filed an affidavit of probable cause which stated, in relevant part, "Covert stated that inmates Rasheme Jones and [Appellant] were being taken out of their cells for an unrelated reason and Covert stated

_____

[1] Appellant represented himself.

he could hear the inmates talking about having something in their cell." Affidavit of Probable Cause, 10/27/20.

On cross-examination by Appellant, Officer Covert denied speaking to Officer Vernail. N.T., 11/3/21, at 74 ("A: My report is what was in there. I didn't and, ever [*sic*] have a conversation with Officer Vernail."). He also admitted that his own report does not reference overhearing Appellant make statements. *Id.* at 75 ("Q: So it doesn't say that you ever heard me speaking through the vents[?] A: In the report, no it does not."). On Appellant's cross-examination of Officer Vernail, Appellant established that Officer Vernail went to the jail on February 28, 2020. When asked if he had a conversation with Officer Covert, Officer Vernail replied, "I don't recall if I spoke to him [on] the day in question. I picked [the evidence] up but I had spoken to him prior to the charges being filed, correct." *Id.* at 117.

Appellant asked for dismissal and/or a mistrial on the grounds "it was clear that … when Covert was testifying … he offered false testimony under oath … it was as clear as day that he had … lied." *Id.* at 132. The trial court responded that inconsistent statements "may affect the credibility for the witness. But it's not a reason for me to dismiss the case." *Id.* at 133. Appellant then stated, "I think that … the inflammatory statements … [were] false, [and] prejudiced the minds of the jury in that I don't think that I could have a fair trial at this point in time." *Id.* The trial court asked, "And specifically what are you saying was an inflammatory statement that deprived you of a fair trial?" *Id.* Appellant replied, "just about the dates and then

- 5 -

whenever we put Vernail on the stand, Vernail actually … he said that he did talk to him but [Covert] just sat there and told the jury that he didn't talk to uh, Vernail." *Id.* The trial court again informed Appellant that this was "a perfectly good argument for you to make in your closing but it's not a reason to dismiss. … Is that what you're saying, … that he is unable to identify your voice?" *Id.* Appellant stated, "it was so many people talking in the vent. … Your Honor, I could hear inmates all the way down the A range[.]" *Id.* at 134. Following more discussion, Appellant stated, "I think that it would have been more proper if he said I think it was [my] voice, not yeah, I know. He didn't see me talkin[g], he didn't see my mouth movin[g]. How does he know?" *Id.* at 136. The Commonwealth responded that "this is a credibility issue for the jury to make," and the judge agreed. *Id.*

Beginning with the first claim, Appellant maintains that the Commonwealth was required to supply Officer Covert's voice identification pursuant to Rule of Criminal Procedure 573, which states in pertinent part:

**(B) Disclosure by the Commonwealth.**

*(1) Mandatory.* In all court cases, on request by the defendant, and subject to any protective order which the Commonwealth might obtain under this rule, the Commonwealth shall disclose to the defendant's attorney all of the following requested items or information, provided they are material to the instant case. The Commonwealth shall, when applicable, permit the defendant's attorney to inspect and copy or photograph such items.

...

(d) the circumstances and results of any identification of the defendant by voice, photograph, or in-person identification;

...

- 6 -

Pa.R.Crim.P. 573.

The Commonwealth responds that it satisfied its discovery obligations and points out that the affidavit of probable cause included references to Officer Covert hearing a conversation. Thus, Appellant "was certainly aware prior to trial that the Commonwealth was going to introduce before the jury evidence that Covert overheard Appellant through the ventilation system." Commonwealth's Brief at 6.

We first set forth our determination that any challenge to the trial court's decision not to grant dismissal and/or a mistrial based on the Commonwealth's alleged discovery failures is waived. Appellant's objection did not cite any failure to supply discovery. Instead, Appellant argued that Officer Covert was not qualified to render an opinion:

> [Officer Covert:] ... I could hear [Appellant] from D8, hollering up to E range to get a fishing line ready--
>
> [Appellant]: Objection, Your Honor. I'd like to object to that. He's, he's not a voice forensic analyst to testify that that was my voice that he heard. Or even [Jones'] voice, he's, there's no way that he could tell--
>
> THE COURT: So normally we would have a foundation in terms of how often he's heard a person speak. He doesn't have to be a scientific expert but there's got to be a foundation for his being able to recognize the voice, before we get into the specifics of what was said.

N.T., 11/3/21, at 55.

The Commonwealth then elicited testimony from Officer Covert establishing how long he had worked in the jail, how many times he had previously encountered Appellant, and the fact he had spoken with Appellant

"[a]t least 50" times. *Id.* at 56. Appellant did not make any other objection, nor did he claim that the Commonwealth violated its discovery obligations. Thus, Appellant's objection was limited to whether Officer Covert had a sufficient basis to recognize Appellant's voice, not whether the Commonwealth had violated its discovery obligations or committed misconduct. As a result, the trial court had no basis to grant a remedy for a discovery violation that was not brought to its attention. *See* Pa.R.Crim.P. 573(E) (authorizing a variety of remedies for discovery violations when "it is brought to the attention of the court that a party has failed to comply with this rule").

Even if Appellant had preserved this claim, we alternatively conclude that Appellant could not prevail on the merits. We agree with the trial court that Appellant has misconstrued the purpose of Rule 573, and that it does not apply to this "identification." Trial Court Opinion ("TCO"), 3/2/22, at 5-6. Thus, there was no basis to grant a mistrial. By way of example, in **Commonwealth v. Jennings**, 630 A.2d 1257 (Pa. Super. 1993), the Commonwealth charged Jennings with selling drugs on the street. The Commonwealth supplied discovery indicating that Jennings was observed "from a 'confidential location'" but declined to specify the exact location. *Id.* at 1259. Jennings asked the trial court to force its disclosure, and the Commonwealth disclosed the evidence to the trial court in an *ex parte* hearing. The court ruled that the Commonwealth did not need to disclose the location.

On appeal, this Court held that the material was not subject to mandatory disclosure. Citing the Comment to Rule 573, we explained that

"identification" refers to "the defendant's person being in some way exhibited to a witness *for the purpose of an identification*: *e.g.*, line-up, stand-up, show-up, one-on-one confrontation, one-way mirror, etc." **Id.** at 1260 (emphasis in original). The officer's observations were not for identification, nor was the defendant exhibited for that purpose. "Rather, [the] observations occurred as the result of his investigation of criminal activity purportedly taking place in the immediate vicinity." **Id.**

The same point applies here. Officer Covert did not identify Appellant by voice for purposes of linking him to the crimes, nor was Appellant exhibited to Officer Covert for that purpose. Appellant and his co-defendant were identified by Officer Covert based on the discovery of suspected contraband in their prison cell. The testimony concerning Appellant's voice was used to supply circumstantial evidence of his guilt, *i.e.*, asking the jury to infer that Appellant had constructive possession of the drugs and intended to conceal them from the search process. As the Comment to the Rule states, the purpose of this discovery rule is to "make possible the assertion of a rational basis for a claim of improper identification…." **Comment** to Rule 573. Thus, the Commonwealth did not violate its mandatory discovery obligations with respect to voice identifications.[2]

---

[2] In response to the Commonwealth's appellate argument that it complied with its discovery obligations, Appellant has requested a remand to the trial court to pursue a claim that the Commonwealth has now "lied to this Court[,]" and that the District Attorney of Fayette County "is running a corrupt and illegal organization[.]" **See** Application for Relief, 9/1/22. We deny the application.

Turning to Appellant's second point of error, he claims that he was "ambushed" at trial and that the Commonwealth deliberately waited until trial to elicit Officer Covert's testimony about Appellant's statements. We disagree, and the case he relies upon is readily distinguishable. Appellant asserts that *Commonwealth v. Shelton*, 640 A.2d 892 (Pa. 1994), is "similar to [the] case at hand." Appellant's Brief at 15. *Shelton* involved trial by ambush. There, the affidavit of probable cause related that "Officer Cunningham bought drugs from an unidentified 'black man in his late twenties' at a suspected 'drug house' located at 207 E. Penn Street, Philadelphia, Pennsylvania." *Shelton*, 640 A.2d at 893. This led to a search warrant for that location. Officer Cunningham did not participate in that search, and Shelton and several other men were arrested. Shelton was charged with several crimes, none of which involved the sale of drugs to Officer Cunningham.

Officer Cunningham apparently disclosed to the prosecutor on the day of trial that Shelton was the unidentified black male who had sold the drugs. The Commonwealth did not disclose this information to Shelton. In fact, during pre-trial motions that took place after the prosecution learned of the identification, the Commonwealth objected when Shelton attempted to ascertain whether anyone had ever linked him to any drug activity prior to the execution of the search warrant. "It was not until his opening statement that the prosecutor mentioned that Officer Cunningham would testify that [Shelton] had sold drugs to Officer Cunningham on August 29, 1989." *Id.* at

- 10 -

895. Shelton moved for mistrial or a continuance on the basis that the Commonwealth violated its discovery obligations concerning identifications.

Our Supreme Court held that the trial court erred by not granting a mistrial, agreeing that the Commonwealth "deliberately withheld such information …. then used the information to ambush" Shelton. *Id.* at 893. None of the discovery material provided to Shelton "generated either before or after [Shelton]'s arrest alleged that the police or anyone had ever seen [him] selling drugs at any time." *Id.* at 896. Shelton was prejudiced because "much of defense counsel's strategy … was designed to show that no one had associated [Shelton] with any previous drug sales at the house." *Id.*

This case does not involve any comparable type of ambush that implicated Appellant's ability to present his defense. The Commonwealth is correct that the discovery material informed Appellant that he and his co-defendant participated in a conversation that was overheard by Officer Covert. Unlike **Shelton**, where the defendant was truly ambushed by the prosecutor suddenly linking Shelton to an unrelated crime, Appellant was always linked to the conversation. Appellant is correct that the material supplied in discovery does not reveal the nature of the conversation. **See** Pa.R.Crim.P. 573(B)(1)(b) (mandating disclosure of "the substance of any … inculpatory statement"). However, Appellant did not cite that failure as a basis for his objection, does not raise any prejudice in that regard, and does not claim that additional investigation would have accomplished anything; *e.g.* that it was

physically impossible to send material through the pipe walk.[3] Thus, any claim premised on the failure to provide the nature of the incriminating statements would not entitle Appellant to relief.

Turning to the third issue, we agree with the Commonwealth that Appellant's arguments that Officers Covert and Vernail lied due to their conflicting police reports involves an attack on their credibility. "A mere conflict in the testimony of the witnesses does not render the evidence insufficient because it is within the province of the fact[-]finder to determine the weight to be given to the testimony and to believe all, part, or none of the evidence." *Commonwealth v. Rabold*, 920 A.2d 857, 859 (Pa. Super. 2007) (quotation marks and citation omitted). The trial court was not authorized to determine on its own that the witnesses were lying and dismiss the case on that basis. Thus, no relief is due on Appellant's claim that the Commonwealth tried him with 'false evidence.'

Appellant's fourth and fifth issue address the introduction of the Pennsylvania State Police laboratory results without the testimony of the forensic analyst who performed the test. Officer Vernail read the lab results into evidence, and Appellant objected on the basis that his Confrontation Clause rights were violated, which is the subject of his fourth issue. The fifth

---

[3] The trial court stated that it was familiar with the jail layout. N.T., 11/3/21, at 134 ("I have been in [the jail] and through it[.] ... I know exactly how big the [pipe walk] is, yeah.").

issue is related, as Appellant contends that Officer Vernail's statement was inadmissible hearsay. *See* Appellant's Brief at 30.

Appellant is correct that the underlying document was testimonial in nature and therefore falls under the coverage of the Confrontation Clause. *See Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 307 (2009) (holding that document "reporting the results of forensic analysis which showed that material seized by the police and connected to the defendant was cocaine" was a testimonial statement by an accusatory witness).

The *Melendez-Diaz* decision recognized, however, that "notice and demand" statutes are constitutional. "In their simplest form, notice-and-demand statutes require the prosecution to provide notice to the defendant of its intent to use an analyst's report as evidence at trial, after which the defendant is given a period of time in which he may object to the admission of the evidence absent the analyst's appearance live at trial." *Id.* at 326. Because a defendant "*always* has the burden of raising his Confrontation Clause objection," these statutes are constitutional as they "simply govern the *time* within which he must do so." *Id.* at 327 (emphasis in original). These "pure" notice-and-demand schemes are constitutional. *Id.* at 327 n.12.

Rule of Criminal Procedure 574 establishes a pure notice-and-demand procedure and was enacted following *Melendez-Diaz.* *Comment* to Pa.R.Crim.P. 574. The Commonwealth replied to Appellant's objection about his Confrontation Clause rights being violated by citing its compliance with Rule 574. Appellant claims that the Commonwealth lied, because the rule

requires the Commonwealth to "file and serve, as provided in Rule 576, upon the defendant's attorney or, if unrepresented, the defendant a written notice." Pa.R.Crim.P. 574. The filing provisions of Rule 576 state, *inter alia*, that "any notices … for which filing is required, shall be filed with the clerk of courts." Pa.R.Crim.P. 576(a)(1). The clerk of courts, upon receipt, "shall time stamp it with the date of receipt and make a docket entry reflecting the date of receipt, and promptly shall place the document in the criminal case file." Pa.R.Crim.P. 576(a)(3).

Appellant correctly states that the docket does not reflect a Rule 574 notice. When Appellant claimed at the close of the Commonwealth's case that he never received a notice, the Commonwealth represented to the trial court that its notice "was dated June 7th of 2021[] to [Appellant,] and to the Public Defender's Office, same date[ of] June 7, 2021." N.T., 11/3/21, at 107. Jones' attorney informed the court, "In any case, Judge, we have it marked received … 6/17/21." *Id.*[4] The trial court credited the Commonwealth's representations that the notice was sent. *Id.* at 126 ("[T]he [c]ourt's persuaded the Commonwealth provided the notice[.]"). Appellant does not cite any authority for the proposition that the failure to comply with the procedural requirements of Rule 574 precludes the admission of the report. *See Commonwealth v. Johnson*, 985 A.2d 915 (Pa. 2009) (concluding

---

[4] The criminal docket for Jones' case is unavailable on the Common Pleas Case Management System. We therefore cannot determine whether Jones' docket contained a notation that the notice was sent.

- 14 -

argument that a prosecutor's comment deprived the appellant of a fair trial was waived for failing to cite and develop argument). Appellant does not explain why actual notice would not suffice. Thus, we deem this argument waived.

Due to our disposition, Appellant's separate claim that the evidence was inadmissible hearsay necessarily fails. Pa.R.Crim.P. 574(B)(3) ("Except as provided in paragraph (C), the laboratory report and accompanying certification are admissible in evidence to the same effect as if the person who performed the analysis or examination had personally testified.").

Appellant's final claim raises various challenges to the sufficiency of the evidence for each conviction. Our standard of review is well-settled:

> Whether sufficient evidence exists to support the verdict is a question of law; our standard of review is *de novo* and our scope of review is plenary. We review the evidence in the light most favorable to the verdict winner to determine whether there is sufficient evidence to allow the [fact-finder] to find every element of a crime beyond a reasonable doubt.

***Commonwealth v. Tejada***, 107 A.3d 788, 792 (Pa. Super. 2015) (citations and quotation marks omitted).

Appellant's overarching argument is that the Commonwealth failed to establish possession of the synthetic marijuana, which is a common element to his convictions for contraband and possession of a controlled substance. Because Appellant did not possess the items on his person, the Commonwealth was required to establish constructive possession.

> Constructive possession is a legal fiction, a pragmatic construct to deal with the realities of criminal law enforcement. Constructive possession is an inference arising from a set of facts that

- 15 -

> possession of the contraband was more likely than not. We have defined constructive possession as conscious dominion. We subsequently defined conscious dominion as the power to control the contraband and the intent to exercise that control. To aid application, we have held that constructive possession may be established by the totality of the circumstances.

***Commonwealth v. Hopkins***, 67 A.3d 817, 820 (Pa. Super. 2013) (citation omitted).

Beginning with his conviction for possession of controlled substances, we conclude that the Commonwealth presented sufficient evidence. Appellant first contends that the items may have been planted, based on his earlier (and rejected) arguments that the Commonwealth's witnesses lied. ***See*** Appellant's Brief at 46 ("Appellant did not have the contraband on his person nor[] … knowledge the contraband was in his cell (if contraband was truly f[o]und at all)."). We may not override the jury's credibility findings.

Appellant separately argues that the Commonwealth failed to establish constructive possession because his cell was accessible to several other inmates. Significantly, Officer Covert, the only eyewitness presented by the Commonwealth, testified that the door to Appellant and Jones' cell was broken. The "sliding mechanism was broken[,]" and the maintenance staff simply used "a chain and a padlock and [kept] it open." N.T., 11/3/21, at 51. During a lockdown, the inmates are locked in their cells, and the doors are locked. Appellant and Jones' door remained open "at all times … due to emergency evacuation procedures and what not, it's always open." ***Id.*** at 67. Thus, "anybody could have gone in or out" of Appellant and Jones' cell. ***Id.*** at 68. Office Covert agreed that he could not answer whether any other

- 16 -

inmate went in and out of the cell before his arrival. *Id*. However, while Appellant and Jones' cell remained open, all other doors were locked. *Id.* at 70.

We agree that it is plausible that another inmate, either at some point during the day or upon initiation of the lockdown procedure, could have thrown the items into Appellant and Jones' open cell. The Commonwealth failed to present any evidence concerning how many inmates were milling about the open area prior to the lockdown, did not review nor preserve video evidence that showed Appellant's cell, and did not establish whether the inmates were supervised as they made their way back to their cells. In the absence of any other circumstantial evidence, Officer Covert's concession that any inmate could have gone in or out of the cell would support a strong argument that the evidence was insufficient to establish constructive possession. But Appellant entirely disregards the circumstantial evidence tying him to the contraband, namely Officer Covert overhearing Appellant's statements. Those statements supplied sufficient evidence to establish Appellant's conscious dominion over the controlled substances. As the trial court remarked in its opinion, Officer Covert's testimony was critical as Appellant had a distinctive voice. "Officer Covert testified that he knew the Appellant's voice. The [c]ourt noted that the Appellant's voice is very distinctive." TCO at 5. Appellant's statements established that he intended to send the contraband up to another inmate, which establishes Appellant's awareness of the substances and his

intent to conceal them from Officer Covert's search. The evidence is therefore sufficient to establish constructive possession.

Regarding Appellant's conviction for contraband, Appellant also argues that the Commonwealth failed to present any evidence that he brought the synthetic marijuana into the jail. Appellant is correct that a charge under subsection (a) of contraband would fail. That statutory language reads:

> **(a) Controlled substance contraband to confined persons prohibited.--**A person commits a felony of the second degree if he sells, gives, transmits or furnishes to any convict in a prison, or inmate in a mental hospital, or gives away in or brings into any prison, mental hospital, or any building appurtenant thereto, or on the land granted to or owned or leased by the Commonwealth or county for the use and benefit of the prisoners or inmates, or puts in any place where it may be secured by a convict of a prison, inmate of a mental hospital, or employee thereof, any controlled substance included in Schedules I through V of the act of April 14, 1972 (P.L. 233, No. 64), known as The Controlled Substance, Drug, Device and Cosmetic Act, (except the ordinary hospital supply of the prison or mental hospital) without a written permit signed by the physician of such institution, specifying the quantity and quality of the substance which may be furnished to any convict, inmate, or employee in the prison or mental hospital, the name of the prisoner, inmate, or employee for whom, and the time when the same may be furnished, which permit shall be delivered to and kept by the warden or superintendent of the prison or mental hospital.

18 Pa.C.S. § 5123(a) (footnote omitted). Appellant is correct that the Commonwealth presented no evidence to establish that Appellant himself brought the contraband into the jail, or sold, gave, furnished, or transmitted the controlled substances. However, the contraband statute separately codifies mere possession of controlled substances by an inmate.

**(a.2) Possession of controlled substance contraband by inmate prohibited.--**A prisoner or inmate commits a felony of the second degree if he unlawfully has in his possession or under his control any controlled substance in violation of section 13(a)(16) of The Controlled Substance, Drug, Device and Cosmetic Act.  For purposes of this subsection, no amount shall be deemed de minimis.

18 Pa.C.S. § 5123(a.2) (footnote omitted).

The criminal information does not reference Section 5123(a.2).  Instead, it cites and quotes Section 5123(a).  However, the information adds the following language after the last sentence of Section 5123(a): "to wit, the defendant[,] an inmate at the Fayette County Prison[,] did possess K2[,] … a Schedule I Controlled Substance."  Criminal Information, 5/6/21, at 1.  The trial court's instructions to the jury specified the crime as "Contraband Possession by an Inmate."  N.T., 11/3/21, at 70.  The instructions for this charge were given after the charge for possession of a controlled substance, and the judge informed the jurors that "[p]ossession by an Inmate is the same as possession with the additional element that the person possessing it was an inmate at a correction[al] institution."  *Id.*  The court then again defined possession.  Finally, the verdict slip for count 1 states at the top "Count 1 Charge: Possess Contraband/Inmate."  Verdict Slip, Count 1, 11/4/21.

This situation involves a potential variance between the criminal information and the verdict slip.  We conclude that Appellant has waived any claim regarding any variance, as he did not object to the jury instructions or the verdict slip.  *See Commonwealth v. Bickerstaff*, 204 A.3d 988, 997

- 19 -

(Pa. Super. 2019) (holding that trial counsel was ineffective for failing to object to variance).

Even if preserved, we would deem the claim is meritless. In *Commonwealth v. Lohr*, 468 A.2d 1375 (Pa. 1983), our Supreme Court examined a similar variance. There, the criminal information charged the defendant with a count of forcible rape under 18 Pa.C.S. § 3121, but the jury found him guilty of statutory rape, then codified at 18 Pa.C.S. § 3122. The key fact was that the criminal information included averments that the victim was thirteen years old (a fact relevant to statutory rape) and that the actor engaged in sexual intercourse with the victim by forcible compulsion or threat of same (a fact relevant to forcible rape). The Court denied relief, finding that there was no variance:

> We have determined that the information effectively charged both statutory rape and forcible rape and, as such, the information was not at variance with the proof of statutory rape adduced at trial. The information charged that [the] appellant had engaged in sexual intercourse with a thirteen[-]year[-]old female. The additional allegation that the rape was nonconsensual merely preserved the right of the Commonwealth to present evidence at trial that the rape was forcible; it did not foreclose proof of statutory rape. That the information refers to a specific section number of the Crimes Code is unfortunate but not fatal. The offense charged and on what statute it is founded is to be determined from the allegations in the information.

*Id.* at 1378 (citation omitted).

We would apply the same logic here. The information effectively charged Appellant with violating 18 Pa.C.S. § 5123(a.2), as the Commonwealth stated that Appellant violated the statute by "possessing" the

synthetic marijuana. Possession is relevant only to Section 5123(a.2). The evidence presented at trial concerned possession, the jury was charged on possession, and both subsections are graded as a felony of the second degree. The Commonwealth's failure to cite the correct subsection "is unfortunate but not fatal." *See id.* Thus, there was no variance. Accordingly, the Commonwealth needed only to establish that he was an inmate and possessed controlled substances. There is no dispute that Appellant was an inmate nor that the substances were controlled substances as defined by law. Our foregoing analysis of the constructive possession issue applies here, and Appellant's challenge fails.

However, we agree with Appellant that his conviction for conspiracy must be discharged. Appellant argues the "mere fact that Appellant shared a cell with Jones [does not *per se*] establish conspiracy." Appellant's Brief at 49. Additionally, the "[j]ury did not believe the Commonwealth established a conspiracy between Appellant and Jones[.] … [T]he jury found [J]ones not guilty of all charges." *Id.* We are guided by the following principles:

> To convict a defendant of conspiracy, the trier of fact must find that: (1) the defendant intended to commit or aid in the commission of the criminal act; (2) the defendant entered into an agreement with another (a "co-conspirator") to engage in the crime; and (3) the defendant or one or more of the other co-conspirators committed an overt act in furtherance of the agreed upon crime. 18 Pa.C.S. § 903. The essence of a criminal conspiracy, which is what distinguishes this crime from accomplice liability, is the agreement made between the co-conspirators.
>
> Mere association with the perpetrators, mere presence at the scene, or mere knowledge of the crime is insufficient to establish that a defendant was part of a conspiratorial agreement to commit

- 21 -

the crime. There needs to be some additional proof that the defendant intended to commit the crime along with his co-conspirator. Direct evidence of the defendant's criminal intent or the conspiratorial agreement, however, is rarely available. Consequently, the defendant's intent as well as the agreement is almost always proven through circumstantial evidence, such as by the relations, conduct or circumstances of the parties or overt acts on the part of the co-conspirators. Once the trier of fact finds that there was an agreement and the defendant intentionally entered into the agreement, that defendant may be liable for the overt acts committed in furtherance of the conspiracy regardless of which co-conspirator committed the act.

***Commonwealth v. Dunkins,*** 229 A.3d 622, 633 (Pa. Super. 2020) (quoting

***Commonwealth v. Golphin***, 161 A.3d 1009, 1018-19 (Pa. Super. 2017)).

With respect to the effect of Jones' acquittal, we note that our Supreme Court has rejected the common law "rule of consistency," which acts as an exception to the usual precept that juries may return inconsistent verdicts. The rule had "steadily been narrowed to apply only to the type of case before us now, where the acquittal and conviction are decided in the same trial." ***Gov't of Virgin Islands v. Hoheb***, 777 F.2d 138, 140 (3d Cir. 1985). However, the rule was effectively eliminated by our Supreme Court in ***Commonwealth v. Campbell***, 651 A.2d 1096 (Pa. 1994) (holding that "consistency in verdicts in a joint trial for conspiracy is not necessarily required"). We thus do not determine that the jury's acquittal of Jones requires discharge of Appellant's conspiracy conviction. Nor do we determine that the jury's acquitting Appellant of conspiracy to commit contraband requires discharge, for that same reason. We simply conclude that the Commonwealth has failed to establish that Jones acted as a co-conspirator.

*Campbell*, 651 A.2d at 1099 (stating that "the convicted conspirator can always challenge his conviction upon sufficiency of the evidence grounds").

In terms of criminal conspiracy, the alleged agreement between the conspirators must be designed to commit a particular crime. In these circumstances, the only crime alleged by the Commonwealth via the two separate conspiracy charges was a conspiracy to commit mere possessory offenses. As the jury acquitted Appellant of a conspiracy to commit contraband, the remaining conspiracy was an agreement to commit the crime of possession.

Since the Commonwealth's conspiracy charge limited the scope of the conspiracy to possessing the synthetic marijuana, the Commonwealth was required to establish that Jones, the only other potential participant, entered into an agreement with Appellant relating to possession. We agree with Appellant that the Commonwealth failed to establish any such agreement between co-conspirators. Simply put, the Commonwealth presented insufficient evidence to establish that Jones had any involvement in these crimes beyond his mere presence in the cell. As elaborated upon *supra*, the Commonwealth's case was significantly weakened by the fact that Appellant and Jones' cell door was inoperable and always remained open.

As with Appellant's possessory conviction, to establish the conspiratorial agreement alleged herein, the Commonwealth was required to establish that Jones constructively possessed the controlled substances. It is well-settled that "where more than one person has equal access to where drugs are stored,

presence alone in conjunction with such access will not prove conscious dominion over the contraband." ***Commonwealth v. Davis***, 480 A.2d 1035, 1045 (Pa. Super. 1984) (citation omitted). In ***Commonwealth v. Mercado***, 617 A.2d 342 (Pa. Super. 1992), this Court deemed the evidence insufficient to support a finding of constructive possession:

> In the present case, the Commonwealth's evidence consisted of the following: the police observation of [the] appellant, leaning out the third floor window of the house where a planned "buy" was made, watching a drug transaction transpire between police and [the] appellant's alleged co-conspirator; the observation of [the] appellant and his alleged co-conspirator in the same position fifteen minutes later, at which time there was no sight of criminal dealing; and the presence of [the] appellant between the first and second floor of the house at the time police uncovered contraband in the third floor apartment. We find this evidence insufficient to support a finding of constructive possession.

***Id***. at 345. We determined that "[Mercado]'s silent observation of a previous drug transaction is not enough to transform his presence in the house at the time of the search into an exercise of conscious dominion over the drugs confiscated by the police." ***Id.***

Similarly, the mere presence of contraband in Jones' cell could not establish constructive possession. We obviously cannot speculate as to why the jury totally acquitted Jones, but whatever its rationale, the jury reached the correct result. We conclude that nothing tied Jones to the contraband beyond his mere presence. Accordingly, Jones could not be a co-conspirator of a conspiracy to possess contraband. Appellant is therefore entitled to discharge. Because the trial court did not impose any sentence at this count, we need not remand for resentencing.

Judgment of sentence for conspiracy to commit possession reversed. Judgments of sentence for contraband and possession of a controlled substance affirmed.  Motion for remand denied.  Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/15/2023